George W. Burbidge II (Utah Bar No. 6503)
Christensen & Jensen, P.C.
15 West South Temple, Suite 800
Salt Lake City, Utah  84101
Telephone:  (801) 323-5000
george.burbidge@chrisjen.com
*Attorneys for Plaintiff Allstate Insurance Company*

J. Scott Humphrey (pro hac vice pending)
Ashley K. Laken (pro hac vice pending)
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
shumphrey@seyfarth.com
alaken@seyfarth.com
*Attorneys for Plaintiff Allstate Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | |
| v. | : | Civil No.: 2:14-cv-00335-BCW |
| | : | **(Jury Trial Demanded)** |
| DEBORAH LAMOREAUX, STACI JEFFRIES | : | |
| and D & S INSURANCE SERVICES, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

Plaintiff Allstate Insurance Company ("Allstate") alleges as follows for its Complaint

against Defendants Deborah Lamoreaux ("Lamoreaux"), Staci Jeffries ("Jeffries"), and D & S

Insurance Services, LLC ("D & S"):

## NATURE OF THE ACTION

1.       This action is the result of Lamoreaux and Jeffries breaching Agreements they had with Allstate.  Specifically, Lamoreaux and Jeffries executed "Confidentiality and Non-Competition Agreements" with Allstate on March 6, 2012 and July 12, 2012, respectively. Pursuant to these Agreements, Lamoreaux and Jeffries agreed to not solicit, sell or broker any products or services that competed with Allstate products or services while performing services under the Agreements.

2.       Under their Confidentiality and Non-Competition Agreements, Lamoreaux and Jeffries also agreed to keep Allstate confidential information confidential and not use Allstate confidential information for any improper purpose, such as using Allstate confidential information to benefit a competitor.

3.       Finally, Lamoreaux and Jeffries, pursuant to their Confidentiality and Non-Competition Agreements, agreed to certain restrictions after their Agreements terminated.  These restrictions included, among other things, Jeffries' and Lamoreaux's promise to not solicit Allstate customers they serviced or possessed confidential information for one year after their Agreements terminated.

4.       Unfortunately, neither Lamoreaux nor Jeffries honored their Confidentiality and Non-Competition Agreements.

5.       Specifically, Lamoreaux and Jeffries terminated their Agreements on December 28, 2012.  Immediately after doing so, as well as before doing so, Lamoreaux and Jeffries solicited Allstate customers on behalf of themselves and their newly formed limited liability

corporation, D & S Insurance Services, LLC.  Based upon information and belief, Lamoreaux and Jeffries did so with the use of Allstate confidential information.

6.      Hence, both Lamoreaux and Jeffries violated the confidentiality obligations and restrictions they owed Allstate under their Confidentiality and Non-Competition Agreements, and also breached statutory and common law duties they owed Allstate.

7.      Consequently, Allstate now brings suit against Lamoreaux and Jeffries for breach of their Confidentiality and Non-Competition Agreements and misappropriation of trade secrets. Allstate also brings suit against D & S for tortious interference.

8.      In doing so, Allstate requests that this Court enter an order a) enjoining Lamoreaux from continuing her knowing and intentional breach of her Confidentiality and Non-Competition Agreement, b) enjoining Jeffries from continuing her knowing and intentional breach of her Confidentiality and Non-Competition Agreement, c) enjoining D & S from continuing its knowing and intentional interference with Lamoreaux's and Jeffries' Confidentiality and Non-Competition Agreements,  and d) enjoining all Defendants from using or possessing Allstate confidential information.  Allstate also asks this Court to award compensatory and punitive damages, as well as Allstate's attorneys' fees, that result from Defendants' illegal conduct.

## **THE PARTIES**

9.      Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

10.     Deborah Lamoreaux ("Lamoreaux") is an individual residing in Salt Lake County, Utah.

17187360v.1

11.     Staci Jeffries ("Jeffries") is an individual residing in Salt Lake County, Utah.

12.     D & S Insurance Services, LLC ("D & S") is a Utah Limited Liability Company located in Salt Lake County, Utah.  Based upon information and belief, Lamoreaux and Jeffries are the only members of D & S and, consequently, all members are residents of Utah.  D & S is an Allstate competitor.

## RELEVANT PERSONS AND ENTITIES

13.     Steven C. Gardner ("Gardner") is an individual doing business in Salt Lake County, and is the owner and manager of the Steven C. Gardner Agency, Inc. d/b/a Meidell-Gardner Agency ("Gardner Agency").

14.     The Gardner Agency is an Exclusive Allstate Agency that employed Jeffries and Lamoreaux until December 28, 2012.

15.     Mark Meidell ("Meidell") is a former Allstate Exclusive Agent who sold his economic interest in his Exclusive Allstate Agency to Gardner in March 2012.

16.     Pacific Crest Services, Inc. ("Pacific Crest") is an Idaho company that does business in Salt Lake County, Utah.  Pacific Crest is an Allstate competitor.

## JURISDICTION AND VENUE

17.     The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

18.     This Court has personal jurisdiction over Defendants because Defendants conduct business in the District of Utah.

19.     Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Allstate's claims occurred in this District.

## BACKGROUND

### Allstate's Business and Hiring of Independent Agents

20.     Allstate is one of the nation's leading providers of insurance products and services to individuals and businesses.  Among other things, Allstate provides automobile insurance, property and casualty insurance, and life insurance to individuals and businesses.

21.     In addition to providing these products and services (collectively "products") directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

22.     Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

23.     After becoming an Allstate Exclusive Agent and executing an Exclusive Agency Agreement, the Exclusive Agent has the ability to hire employees to assist the Exclusive Agent in the Exclusive Agent's performance of the duties and obligations the Exclusive Agent owes Allstate under the Exclusive Agency Agreement.

24.     Accordingly, all Exclusive Agents are required to have their employees execute a "Confidentiality and Non-Competition Agreement" before the employee is hired or provided with access to Allstate's confidential information.

25.     Under the "Confidentiality and Non-Competition Agreement", the Exclusive Agency employees agree to assist the Exclusive Agent in performing services under the Exclusive Agent's Exclusive Agency Agreement, acknowledge that they will have access to Allstate confidential information, promise to not disclose confidential information to anyone not authorized to receive it, and confirm that they will not use confidential information for their own benefit or for any improper purpose.

26.     The employees of the Exclusive Agent also agree that, upon termination of their employment with the Exclusive Agent, and/or their Confidentiality and Non-Competition Agreement, they will a) continue to treat Allstate confidential information as confidential, b) will not disclose, either directly or indirectly, Allstate confidential information to any third party, and c) will immediately return all Allstate confidential information to Allstate.

27.     Allstate expends substantial resources advertising, marketing and promoting its products.  The Exclusive Agents and their employees benefit directly and indirectly from Allstate's advertising, marketing and promotion efforts, as well as from Allstate's goodwill, reputation and name recognition.  These efforts and expenditures allow the Exclusive Agents and their employees to develop and cultivate accounts and relationships on behalf of Allstate.

28.     Accordingly, Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.  Maintaining goodwill and a solid business reputation with its customers and insureds is a critical component of Allstate's success.  Indeed, because Allstate's business is a service business, the relationship that each Exclusive Agent and his employees have with Allstate customers is highly dependent

- 6 -

on the attention and excellent service given to the customer on an ongoing basis, and the

continued trust the customers place in Allstate as a leading provider of such services.

### Protection of Allstate Confidential Information

29.     Allstate and its customers entrust Allstate's Exclusive Agents and their employees

to safeguard and protect their private information, which includes information relating to, among

other things, their personal data, date of birth, social security numbers, types of policies, amount

of insurance, premium amounts, description and location of assets and property, claims histories,

insurance needs, pricing information, and other insurance coverage information, from

unauthorized use or disclosure.

30.     Allstate protects the information described in paragraph 29 by, among other

things:  limiting the disclosure and use of this information to only the Exclusive Agent and the

Exclusive Agent's employees who need this information to sell Allstate products; educating the

Exclusive Agent and the Exclusive Agent's employees about the requirement and necessity of

keeping this information confidential; restricting access to this information by restricting access

to computer networks and requiring the use of passwords to access the information; and, as

discussed above, requiring both the Exclusive Agent and the Exclusive Agent's employees

execute written agreements that protect against the misuse and improper disclosure of Allstate's

confidential information.

31.     Consequently, an Exclusive Agent's employees agree, pursuant to the terms of

their Confidentiality and Non-Competition Agreements, that, upon termination of their

employment with the Exclusive Agent and/or their Confidentiality and Non-Competition

Agreement, they will continue to treat Allstate confidential information as confidential, will not

disclose, either directly or indirectly, Allstate confidential information to any third party, and will immediately return all Allstate confidential information to Allstate.

32.     Hence, the information described in paragraph 29 is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.

**Gardner Enters into an EA Agreement and hires Lamoreaux and Jeffries**

33.     After proceeding through Allstate's rigorous screening process to become an Exclusive Agent, Gardner executed the "Allstate R3001S Exclusive Agency Agreement" ("EA Agreement") with Allstate on March 1, 2012, and began selling Allstate products and services. (A copy of Gardner's EA Agreement is attached as Exhibit A).

34.     Pursuant to Section I(A) of the EA Agreement, Gardner was authorized to sell Allstate products, and receive and accept applications for insurance covering such classes of risks located in the state of Utah.  (EA Agreement, ¶ I(A)).

35.     Pursuant to Section I(D) and III (A-D) of the EA Agreement, Gardner has the "sole and exclusive right to hire, transfer, suspend, layoff, recall, promote, assign, discipline, and discharge employees" to assist him in the performance of the duties and obligations he owes Allstate under the EA Agreement.  (*Id.*).

36.     Prior to March 2012, Lamoreaux was the office manager for Exclusive Allstate Agent Mark Meidell ("Meidell").  In fact, Lamoreaux had worked for Meidell for over fifteen years prior to March 2012.  As such, Lamoreaux was very familiar with the Allstate customers and Allstate confidential information Meidell used at his Exclusive Allstate Agency.

37.     In March 2012, Gardner purchased Mark Meidell's economic interest in his Exclusive Allstate Agency, opened the Gardner Agency, and hired Lamoreaux.  In this capacity, Lamoreaux continued working with the Allstate customers and confidential information she had worked with over the last fifteen years (i.e. while working for Meidell).

38.     In July 2012, Gardner hired Jeffries.

39.     Before Gardner could allow Lamoreaux and/or Jeffries to assist him in the performance of the duties and obligations he owed Allstate under his EA Agreement (i.e. before Lamoreaux and Jeffries could begin working for the Gardner Agency), Gardner was required to have Lamoreaux and Jeffries execute a "Confidentiality and Non-Competition Agreement."

40.     Naturally then, Gardner, on behalf of the Gardner Agency, Lamoreaux, and Allstate executed a Confidentiality and Non-Competition Agreement ("Lamoreaux Agreement") on March 6, 2012.

41.     Gardner, on behalf of the Gardner Agency, Jeffries, and Allstate executed a Confidentiality and Non-Competition Agreement ("Jeffries Agreement") on July 12, 2012.

**Lamoreaux Agreement**

42.     As stated above, before Lamoreaux was authorized to sell and/or assist with the selling of Allstate products, and before she could derive compensation therefrom, Lamoreaux executed a Confidentiality and Non-Competition Agreement (the "Lamoreaux Agreement") with Allstate and the Gardner Agency.  (A copy of the Lamoreaux Agreement is attached as Exhibit B).

- 9 -

43.     Lamoreaux acknowledged under the Lamoreaux Agreement that she would have access to the following Allstate "confidential information while performing services under the Lamoreaux Agreement":

> business plans of the [Allstate]; information regarding the names, addresses, and ages of policyholders or prospective policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and matter identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public. (*Id.* at ¶¶ 2, 3).

44.     Lamoreaux promised under the Lamoreaux Agreement to maintain the confidentiality of Allstate confidential information and to return Allstate confidential information to Allstate when her employment with the Gardner Agency terminated.  (Lamoreaux Agreement, ¶¶ 4-6).

45.     Lamoreaux also promised not to use Allstate confidential information for any improper purpose either before or after her employment with the Gardner Agency terminated. (*Id.*).

46.     Pursuant to Paragraph 9 of the Lamoreaux Agreement, Lamoreaux agreed that, while working for the Gardner Agency and performing services under the Lamoreaux Agreement, she would not "either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent or broker … without the prior written consent of [Allstate]. " (Lamoreaux Agreement, ¶ 9).

- 10 -

47.     Similarly, Lamoreaux agreed that, while working for the Gardner Agency and performing services under the Lamoreaux Agreement, she would not "either directly or indirectly, … refer an [insurance] prospect to another agent, company or broker without the prior written consent of [Allstate]."  (*Id.*).

48.     Finally, pursuant to Paragraph 7 of the Lamoreaux Agreement, Lamoreaux agreed that, for one year following the termination of her employment with the Gardner Agency, she would not "solicit the purchase of products or services competitive with those sold by Allstate:

> a.     With respect to any person, company, or organization to whom [Gardner] or any person employed by [Gardner], including [Lamoreaux], sold insurance or other products or services on behalf of Allstate and who is a customer of Allstate at the time of the termination of [Lamoreaux's] employment;
>
> b.     With respect to any person, company, or organization who is a customer of Allstate at the time of termination of this Agreement and whose identity was discovered [by Lamoreaux] as a result of [Lamoreaux's] access to confidential information of Allstate; or
>
> c.     From any office or business site located within one (1) mile of any locations which [Gardner] solicited or sold Allstate Insurance or other products or services during the year immediately preceding the termination of [Lamoreaux's] employment."

49.     Lamoreaux recognized that a breach of any of the provisions identified in Paragraph 7 would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure."  (Lamoreaux Agreement, ¶ 10).

50.     Lamoreaux also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon breach of the [Agreement]."  (*Id.*).

**Jeffries Agreement**

51.     Before Jeffries was authorized to sell and/or assist with the selling of Allstate

products, and before she could derive compensation therefrom, Jeffries executed a

Confidentiality and Non-Competition Agreement (the "Jeffries Agreement") with Allstate and

the Gardner Agency.  (A copy of the Jeffries Agreement is attached as Exhibit C).

52.     Jeffries acknowledged under the Jeffries Agreement that she would have access to

the following Allstate "confidential information while performing services under the Jeffries

Agreement":

> business plans of the [Allstate]; information regarding the names,
> addresses, and ages of policyholders or prospective policyholders
> of [Allstate]; types of policies; amounts of insurance; premium
> amounts; the description and location of insured property; the
> expiration or renewal dates of policies; policyholder listings and
> any policyholder information subject to any privacy law; claim
> information; certain information and matter identified by [Allstate]
> as confidential or information considered a trade secret as provided
> herein or by law; and any information concerning any matters
> affecting or relating to the pursuits of [Allstate] that is not
> otherwise lawfully available to the public. (*Id.* at ¶¶ 2, 3).

53.     Jeffries promised under the Jeffries Agreement to maintain the confidentiality of

Allstate confidential information and to return Allstate confidential information to Allstate when

her employment with the Gardner Agency terminated.  (Jeffries Agreement, ¶¶ 4-6).

54.     Jeffries also promised to not use Allstate confidential information for any

improper purpose either before or after her employment with the Gardner Agency terminated.

(*Id.*).

55.     Pursuant to Paragraph 9 of the Jeffries Agreement, Jeffries agreed that, while

working for the Gardner Agency and performing services under the Jeffries Agreement, she

would not "either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent or broker … without the prior written consent of [Allstate]." (Jeffries Agreement, ¶ 9).

56.   Similarly, Jeffries agreed that, while working for the Gardner Agency and performing services under the Jeffries Agreement, she would not "either directly or indirectly, … refer an [insurance] prospect to another agent, company or broker without the prior written consent of [Allstate]." (*Id.*).

57.   Finally, pursuant to Paragraph 7 of the Jeffries Agreement, Jeffries agreed that, for one year following the termination of her employment with the Gardner Agency, she would not "solicit the purchase of products or services competitive with those sold by Allstate:

   a.   With respect to any person, company, or organization to whom [Gardner] or any person employed by [Gardner], including [Jeffries], sold insurance or other products or services on behalf of Allstate and who is a customer of Allstate at the time of the termination of [Jeffries'] employment;

   b.   With respect to any person, company, or organization who is a customer of Allstate at the time of termination of this Agreement and whose identity was discovered [by Jeffries] as a result of [Jeffries'] access to confidential information of Allstate; or

   c.   From any office or business site located within one (1) mile of any locations which [Gardner] solicited or sold Allstate Insurance or other products or services during the year immediately preceding the termination of [Jeffries'] employment."

58.   Jeffries recognized that a breach of any of the provisions identified in Paragraph 7 would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure." (Jeffries Agreement, ¶ 10).

17187360v.1

59.     Jeffries also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon breach of the [Agreement]." (*Id.*).

**Lamoreaux and Jeffries begin illegally competing with Allstate**

60.     Utah law requires that any person who solicits or sells insurance on behalf of an insurance carrier be a licensed insurance agent and receive an appointment from the insurance carrier.

61.     Thus, after executing their respective agreements, appropriate filings were made with the Utah Insurance Commissioner giving notice of Lamoreaux's and Jeffries' appointment to solicit and sell insurance products on behalf of Allstate.

62.     Unfortunately, neither Lamoreaux nor Jeffries complied with their appointment or the agreements they signed with Allstate.

63.     Specifically, on September 17, 2012, Jeffries became affiliated with Pacific Crest as an insurance agent.

64.     Pacific Crest sells products and services that compete with Allstate and is, therefore, an Allstate competitor.

65.     Jeffries was employed by the Gardner Agency on September 17, 2012 and did not inform Gardner or the Gardner Agency of her Pacific Crest appointment and/or her selling of non-Allstate insurance products and services at that time.

66.     Similarly, Jeffries did not notify Allstate or ask for Allstate's consent to sell non-Allstate insurance products or services on or before September 17, 2012.

17187360v.1

67.     Even more disturbing, Jeffries, with Lamoreaux's assistance, began rewriting and diverting Allstate customers to other insurance carriers before her appointment with Pacific Crest on September 17, 2012.

68.     Just like Jeffries, Lamoreaux did not inform Gardner or the Gardner Agency that she was selling non-Allstate products and services while working for the Gardner Agency.

69.     Nor did Lamoreaux notify Allstate or ask for Allstate's consent to sell non-Allstate insurance products or services while working for the Gardner Agency.

70.     Jeffries and Lamoreaux used Allstate confidential information to rewrite insurance business for Allstate customers and to divert Allstate customers to Pacific Crest and other insurance carriers while working for the Gardner Agency.

71.     Jeffries and Lamoreaux also used Gardner Agency's resources, such as office space, computers, and phones, to compete with the Gardner Agency and Allstate, and to divert Allstate customers to Pacific Crest and other insurance carriers while working for the Gardner Agency.

**Lamoreaux and Jeffries terminate their employment with the Gardner Agency**

72.     On Friday, December 28, 2012, with no prior notice, Lamoreaux and Jeffries informed Gardner and the Gardner Agency that they were terminating their employment with the Gardner Agency, effective immediately.

73.     Unbeknownst to Allstate, Lamoreaux and Jeffries had been secretly competing with Allstate and planning their termination for several months prior to December 28, 2012.

## **D & S**

74.     As a result of terminating their employment with the Gardner Agency and their relationship with Allstate on December 28, 2012, Lamoreaux and Jeffries were prohibited from soliciting Allstate customers whom they or the Gardner Agency sold Allstate products or services to, as well as any Allstate customers Lamoreaux or Jeffries possessed confidential information about, until after December 28, 2013.

75.     D & S is located at 1196 West South Jordan Parkway in South Jordan, Utah.

76.     Based upon information and belief, Lamoreaux and Jeffries are the sole members of D & S.

77.     D & S is an Allstate competitor and Lamoreaux and Jeffries formed D & S in order to, among other things, compete with Allstate and the Gardner Agency.

78.     Between December 28, 2012 and December 28, 2013, Lamoreaux, on behalf of herself and D & S, solicited Allstate customers that she serviced or knew about while performing services under the Lamoreaux Agreement.

79.     Between December 28, 2012 and December 28, 2013, Jeffries, on behalf of herself and D & S, solicited Allstate customers that she serviced or knew about while performing services under the Jeffries Agreement.

80.     Based upon information and belief, and prior to December 28, 2013, Jeffries and Lamoreaux, on behalf of themselves and D & S, used Allstate confidential information to solicit and encourage Allstate customers to terminate their relationship with Allstate and the Gardner Agency.

17187360v.1

81.     After December 28, 2013, Jeffries and Lamoreaux were permitted to solicit Allstate customers they serviced or knew about while performing services under their respective agreements.  Jeffries and Lamoreaux were not, however, permitted to use Allstate confidential information for their own benefit and/or the benefit of D & S after December 28, 2013.

82.     Yet, based upon information and belief, Jeffries and Lamoreaux, on behalf of themselves and D & S, continue to use Allstate confidential information to solicit and encourage Allstate customers to terminate their relationship with Allstate and the Gardner Agency.

83.     As a result of Jeffries' and Lamoreaux's actions, Allstate has lost numerous customers and suffered damage to its legitimate business interests and goodwill.

## Irreparable Harm to Allstate

84.     Jeffries is harming Allstate's legitimate business interests by retaining and using Allstate confidential information to solicit Allstate customers.

85.     Lamoreaux is harming Allstate's legitimate business interests by retaining and using Allstate confidential information to solicit Allstate customers.

86.     D & S is harming Allstate's legitimate business interests by using Allstate confidential information to solicit Allstate customers and by knowingly and intentionally assisting Lamoreaux and Jeffries in the conduct described above.

87.     Moreover, Allstate's trade secrets, confidential information and goodwill are at risk because Defendants are unfairly competing with Allstate.

88.     Similarly, the Gardner Agency's good will is at risk because the Defendants are illegally using Allstate confidential information to compete with the Gardner Agency.

89.     Accordingly, Allstate is suffering irreparable harm as a result of Defendants' actions.  Injunctive relief is therefore necessary and appropriate to prevent further damage.

## COUNT I
### (Breach of Contract – Jeffries)

90.     Allstate repeats and realleges paragraphs 1 through 89 of the Complaint, as if fully set forth herein.

91.     Jeffries voluntarily entered into the Jeffries Agreement with Allstate.

92.     Under the Jeffries Agreement, Jeffries agreed that, while working for the Gardner Agency and performing services under the Jeffries Agreement, she would not solicit, sell, or service insurance of any kind for any other company, agent or broker without Allstate's consent.

93.     Under the Jeffries Agreement, Jeffries agreed that, while working for the Gardner Agency and performing services under the Jeffries Agreement, she would not send or refer an insurance prospect to another agent, company or broker without Allstate's consent.

94.     Under the Jeffries Agreement, Jeffries agreed, for one year following the termination of the Jeffries Agreement, to not solicit the purchase of products or services competitive with those sold by Allstate to any person, company or organization to whom the Gardner Agency or herself sold Allstate products to and who was a customer of Allstate at the time the Jeffries Agreement terminated.

95.     Under the Jeffries Agreement, Jeffries also agreed to return all Allstate confidential information and to not use Allstate confidential information when the Jeffries Agreement terminated.

96.     The post termination covenants found in the Jeffries Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and long standing customer relationships.

97.     Allstate has performed all the duties and obligations it owes Jeffries under the Jeffries Agreement.

98.     Jeffries breached the Jeffries Agreement by, among other things, soliciting Allstate customers both before and after she terminated the Jeffries Agreement.

99.     Jeffries breached, and continues to breach, the Jeffries Agreement by using Allstate confidential information.

100.    Allstate has incurred significant damages as a result of Jeffries's breach of the Jeffries Agreement.  Specifically, Allstate has suffered the loss of customers and potential customers.  Jeffries' actions have also damaged Allstate's goodwill, reputation and legitimate business interests.

101.    Moreover, Jeffries' breach of the Jeffries Agreement with respect to Allstate confidential information is ongoing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its good will and business reputation.

102.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Jeffries' breach of the Jeffries Agreement in a manner that is not fully compensable by monetary damages.

103.    Allstate therefore requests that this Court grant injunctive relief against Jeffries that prohibits Jeffries from using Allstate confidential information.

17187360v.1

104.     Finally and pursuant to Paragraph 10 of the Jeffries Agreement, Allstate is entitled to recover the attorneys' fees and costs it incurs as a result of Jeffries' breach of the Jeffries Agreement.

## <u>COUNT II</u>
### (Breach of Contract - Lamoreaux)

105.     Allstate repeats and realleges paragraphs 1 through 104 of the Complaint, as if fully set forth herein.

106.     Lamoreaux voluntarily entered into the Lamoreaux Agreement with Allstate.

107.     Under the Lamoreaux Agreement, Lamoreaux agreed that, while working for the Gardner Agency and performing services under the Lamoreaux Agreement, she would not solicit, sell, or service insurance of any kind for any other company, agent or broker without Allstate's consent.

108.     Under the Lamoreaux Agreement, Lamoreaux agreed that, while working for the Gardner Agency and performing services under the Lamoreaux Agreement, she would not send or refer an insurance prospect to another agent, company or broker without Allstate's consent.

109.     Under the Lamoreaux Agreement, Lamoreaux agreed, for one year following the termination of the Lamoreaux Agreement, to not solicit the purchase of products or services competitive with those sold by Allstate to any person, company or organization to whom Gardner or herself sold Allstate products to and who was a customer of Allstate at the time the Lamoreaux Agreement terminated.

110.     Under the Lamoreaux Agreement, Lamoreaux agreed to return all Allstate confidential information and to not use Allstate confidential information when the Lamoreaux Agreement terminated.

- 20 -

111.   The post termination covenants found in the Lamoreaux Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and long standing customer relationships.

112.   Allstate has performed all the duties and obligations it owes Lamoreaux under the Lamoreaux Agreement.

113.   Lamoreaux breached the Lamoreaux Agreement by, among other things, soliciting Allstate customers both before and after she terminated the Lamoreaux Agreement.

114.   Lamoreaux breached, and continues to breach, the Lamoreaux Agreement by using Allstate confidential information.

115.   Allstate has incurred significant damages as a result of Lamoreaux's breach of the Lamoreaux Agreement.  Specifically, Allstate has suffered the loss of customers and potential customers.  Lamoreaux's actions have also damaged Allstate's goodwill, reputation and legitimate business interests.

116.   Moreover, Lamoreaux's breach of the Lamoreaux Agreement with respect to Allstate's confidential information is ongoing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its good will and business reputation.

117.   Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Lamoreaux's breach of the Lamoreaux Agreement in a manner that is not fully compensable by monetary damages.

118.   Allstate therefore requests that this Court grant injunctive relief against Lamoreaux that prohibits Lamoreaux from using Allstate confidential information.

- 21 -

119.    Finally and pursuant to Paragraph 10 of the Lamoreaux Agreement, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of Lamoreaux's breach of the Lamoreaux Agreement.

<u>**COUNT III**</u>
**(Misappropriation of Trade Secrets and Confidential Information – All Defendants)**

120.    Allstate repeats and realleges paragraphs 1 through 119 of the Complaint, as if fully set forth herein.

121.    During the course of her relationship with Allstate and the Gardner Agency, Jeffries was exposed to substantial amounts of Allstate confidential information.

122.    For instance, Jeffries had access to:  Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

123.    During the course of her relationship with Allstate, Lamoreaux was exposed to substantial amounts of Allstate's confidential information.

124.    For instance, Lamoreaux had access to:  Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

125.    The information described in Paragraphs 29, 43, 52, 122 and 124 is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly

confidential in order to protect its customers' privacy and in order to maintain a competitive advantage in the highly competitive insurance business.

126.    The economic value of the Allstate trade secrets/confidential information that Jeffries and/or Lamoreaux had access to is over $1 million.

127.    The information identified in Paragraphs 28, 42, 51, 122 and 124 is considered a trade secret under the Utah Trade Secrets Act ("UTSA"), Utah Code § 13-24-1 et al., because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

128.    Under the UTSA, "actual or threatened misappropriation [of trade secrets] may be enjoined."

129.    It is axiomatic that if Lamoreaux and Jeffries violated and are violating the Agreements they signed with Allstate, then Lamoreaux and Jeffries have no intention of complying with the terms of the Agreements, including their obligations to not disclose or misuse Allstate confidential information.

130.    Moreover, if D & S is actively benefitting from Lamoreaux's and Jeffries' breach of the Agreements they signed with Allstate, then it is clear that D & S is benefitting from Lamoreaux's and Jeffries's use of Allstate confidential information.

131.    Accordingly, Defendants' actions constitute the "actual" and "threatened" misuse of Allstate's trade secrets.  Injunctive relief is therefore appropriate.

17187360v.1

132.     Naturally then, Allstate requests that this Court enter an order enjoining Defendants from using any Allstate confidential information, and award Allstate damages for the misuse and misappropriation of its confidential information.

133.     Allstate also requests that this Court enter an order requiring Defendants to return any and all Allstate confidential information to Allstate.

134.     Finally, Allstate is entitled to punitive and compensatory damages because Defendants' misappropriation and threatened misappropriation of Allstate trade secrets was willful and wanton.

## COUNT IV
### (Tortious Interference - D & S)

135.     Allstate repeats and realleges paragraphs 1 through 134 of the Complaint, as if fully set forth herein.

136.     D & S is and was aware of the contractual relationship between Allstate and its customers.

137.     D & S is and was aware of the Jeffries Agreement and the Lamoreaux Agreement.

138.     D & S knew and understood that Allstate's contractual relationship with its customers would continue after the Jeffries Agreement and the Lamoreaux Agreement terminated.

139.     Nevertheless, D & S, through Jeffries and Lamoreaux, contacted Allstate customers that were serviced by Jeffries and Lamoreaux in order to have the customers terminate their relationship with Allstate.

140.     D & S also, through Jeffries and Lamoreaux, misappropriated and used Allstate confidential information.

17187360v.1

141.     Accordingly, D & S knowingly, intentionally, and willfully interfered with Allstate's customer relationships, Allstate confidential information, the Lamoreaux Agreement and the Jeffries Agreement.

142.     Allstate has incurred significant damages as a result of D & S's interference. Allstate has suffered the loss of customers and potential customers.  D & S's actions have also damaged Allstate's confidential information, goodwill, reputation, and legitimate business interests.

143.     Allstate is therefore entitled to recover compensatory damages and interest in an amount to be proven at trial for D & S's tortious interference.

144.     Punitive damages should also be awarded because D & S's conduct is willful, wanton and malicious.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.      Enter an injunction enjoining and restraining Defendants Deborah Lamoreaux, Staci Jeffries, and D & S Insurance Services, LLC, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from using any Allstate confidential information for their own benefit and from disclosing Allstate confidential information to anyone not authorized to receive the information.

2.      Enter an order requiring Defendants to return all Allstate confidential information in their possession or control to Allstate;

3.      Enter judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

- 25 -

4.      Enter judgment against Defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

5.      Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Jeffries's and Lamoreaux's breach of their Agreements with Allstate; and

6.      Award Allstate such other relief as the Court may deem just and proper.

DATED this 2nd day of May, 2014.

CHRISTENSEN & JENSEN, P.C.


_____/s/ George W. Burbidge II_____
George W. Burbidge II

Scott Humphrey (pro hac vice pending)
Ashley K. Laken (pro hac vice pending)
Seyfarth Shaw LLP

*Attorneys for Plaintiff*

17187360v.1